UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
EZEQUIEL ARROYO,              )
      Petitioner,            )
                             )          CIVIL ACTION NO.
          v.                 )          05-11277-DPW
                             )
BERNARD BRADY,               )
      Respondent.            )
```

<u>MEMORANDUM AND ORDER</u>
April 11, 2006

Petitioner, Ezequiel Arroyo, seeks habeas corpus relief, pursuant to 28 U.S.C. § 2254, from his state court convictions for murder in the first degree, assault and battery by means of a dangerous weapon, and unlawful possession of a firearm.  As grounds for relief, Arroyo asserts the following violations of his federal constitutional due process rights during his state court trial.[1]

(A)  That the state court erroneously admitted expert witness DNA testimony without a *Daubert* hearing;

(B)  That the evidence was insufficient to establish his guilt beyond a reasonable doubt; and

(C)  That the prosecutor's summation violated his due process rights.

---

[1] In the Petitioner's Reply Memorandum, he withdraws and consents to the dismissal of his Fourth Amendment claim regarding the legality of the seizure of his blood.

The Respondent contends that the grounds advanced by the Petitioner are procedurally defaulted and/or that the adjudication of his claims by the state courts was neither contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court.  For the reasons set forth below, I will deny habeas relief.

## I.  BACKGROUND

### A.  Facts

The facts underlying Arroyo's conviction are set out in detail in the opinion of the Massachusetts Supreme Judicial Court ("SJC").  Commonwealth v. Arroyo, 442 Mass. 135, 136-39 (2004).  "[F]ederal habeas courts must make as the starting point of their analysis the state courts' determinations of fact," Williams v. Taylor, 529 U.S. 362, 386 (2000), since these factual findings are presumed to be correct.  28 U.S.C. § 2254(e)(1); Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002).  Consequently, I summarize the SJC's "presumptively-correct factual determinations ... about the evidence presented at [Arroyo's] criminal trial." Hurtado v. Tucker, 245 F.3d 7, 10 (1st Cir. 2001)(footnote omitted).

On May 19, 1998, five shots were fired in front of a church in Dorchester killing Luis Rivera and injuring Marie LaBranche.  Certain eyewitnesses to the shooting testified that the assailant was a "male (of unidentified ethnicity, but who 'had white

skin'), sixteen to twenty-one years old, between five feet, three inches and five feet, eight inches tall, 'buffed' (as opposed to having a 'husky build'), with dark hair and without a hat, wearing brown corduroy trousers, and a green nylon or flight-type jacket." Arroyo, 442 Mass. at 137.  However, a police officer conceded on cross-examination that another unidentified person at the scene told him that the assailant "was Hispanic and was wearing a green or blue jacket, a dark-colored hat, and jeans." Id. at 137 n. 1.[2]

After the shooting, the assailant ran away.  A local resident testified that he saw a "white or Hispanic male wearing a green jacket" run up his street and disappear toward Virginia Street.  Id.  Residents at 9 Virginia Street told police that they saw someone run through their yard from Virginia Street toward Monadnock Street.

The assailant was not apprehended, but in searching the area police found a nylon green jacket, which appeared to have been discarded recently,[3] lying along a fence at the back of 10

_____

[2] Other descriptions by unidentified eyewitness reported to the investigating police officers included references to the shooter wearing a "green or blue" jacket, a navy blue shirt, and a blue or black cap. [A.R. II(1), Transcript at pp. 1-62, 1-71, 1-141; A.R. II(2), Transcript at p. 2-21].  One of the unidentified witnesses described the shooter as "heavy set". [A.R. II(1), Transcript at p 1-71.]

[3] Officer Houston testified on cross-examination that the jacket "appeared to be recently discarded" because "[i]t wasn't dirty."  [A.R. II(2), Transcript at p. 28.]

Virginia Street.  A witness to the shooting testified that this green jacket was "pretty similar" to the one she saw the assailant wearing at the shooting.  Id. at 137-38.

A Boston police criminalist did DNA testing on a blood stain found on the exterior right chest of the jacket.[4]  The DNA profile indicated that Arroyo was a possible source of that blood stain, and that only one in 75,000 Caucasians, one in 81,000 Southeastern Hispanics and one in 1,300,000 African-Americans shared that profile.  Id. at 138.

On the day before the shooting, Arroyo's girlfriend, Eveliz Leon, accused Rivera, the deceased victim, of stealing clothes that belonged to her and Arroyo, and asked Arroyo "to do something about it."  Id.  Leon and Arroyo had their clothes in trash bags while they were staying with Leon's cousin, Carmen Torres, who had previously been in a long-term relationship with Rivera by whom she had three children.  Rivera's sister testified that, on the day before the shooting, Rivera had come home with trash bags full of clothing that was not his.  On the day he was shot he had been wearing some of it.  Id.

The morning of the shooting, Torres walked with Leon and

_____

[4] There were also blood stains on the wrist of the jacket. The Commonwealth presented evidence at trial that an individual firing a semiautomatic 9 mm handgun could, with an improper grip on the pistol, receive a cut by the action of the pistol's slide. However, the Commonwealth did not present evidence that Arroyo received such an injury or that the 9mm gun seen in Arroyo's possession was used in the crime.  Commonwealth v. Arroyo, 442 Mass. 135, 138 n. 2 (2004).

Arroyo to a bus stop, where Arroyo and Leon took a bus to a travel agency to purchase airline tickets to travel to Puerto Rico.  On the way to the bus stop, the three discussed Rivera's alleged theft of the clothes.  Torres told Arroyo to "forget about it," and that she would pay for the clothes, but Arroyo replied that he would "take care of [it]."  Id. at 139.  Torres noticed that Arroyo was carrying a 9 mm handgun and wearing a jacket, the color of which she could not remember at trial.

Torres next saw Arroyo that evening, prior to learning of Rivera's death.  Arroyo was no longer wearing a jacket.[5]  When Arroyo saw Torres, he said, "I'm sorry," without explanation. Id.  He then spoke privately to Leon, who had returned from the travel agency earlier in the day without Arroyo.  Within five minutes of arriving, Arroyo left.  Later that evening, Leon also left Torres.  Id.

B.    **Procedural History**

Defense counsel moved for a required finding of not guilty at the close of the Commonwealth's case, and renewed the motion at the close of the defendant's case and again after the verdicts.  Judge Spurlock denied the motions.  [A.R. I, p. 6-8 of Docket Sheet; Arroyo, 442 Mass. at 139.]  On January 24, 2002, the jury found the petitioner guilty of all three offenses.

Arroyo appealed the conviction to the SJC, raising eight

_____

[5] See discussion in Subsection III.B., _infra_.

claims:

> I) that the Commonwealth's evidence was insufficient to support the conviction and thus, the convictions violate due process of law under the State and Federal Constitutions; [A.R. I(2), p. 21 of the Appellant's Brief]
> II) that the indictment should have been dismissed because insufficient evidence was presented to support it and the Commonwealth failed to present exculpatory evidence to the Grand Jury; [A.R. I(2), p. 29 of the Appellant's Brief]
> III) that the DNA evidence should have been suppressed because there was no probable cause to order the petitioner's blood sample; [A.R. I(2), p. 32 of the Appellant's Brief]
> IV) that the trial court improperly admitted the green jacket, which was not positively identified as having been worn by the assailant, into evidence, thereby violating his due process rights under the Fifth and Fourteenth Amendments and Article 12; [A.R. I(2), p. 33 of the Appellant's Brief]
> V) that the trial court erroneously admitted expert witness testimony concerning prejudicial DNA blood evidence without first conducting a hearing or inquiry regarding its reliability; [A.R. I(2), p. 36 of the Appellant's Brief]
> VI) that the prosecutor's summation was improper and not founded upon the evidence, thereby violating his due process rights under  the Fifth and Fourteenth Amendments and Article 12; [A.R. I(2), p. 39 of the Appellant's Brief]
> VII) that the trial court erroneously charged the jury concerning the assault and battery with a dangerous weapon charge; and [A.R. I(2), p. 48 of the Appellant's Brief]
> VIII) that his conviction of murder in the first degree should be vacated pursuant to the SJC's authority under M.G.L. c. 278, § 33E. [A.R. I(2), p. 50 of the Appellant's Brief]

The SJC affirmed the convictions on June 25, 2004 and denied his petition for rehearing on July 21, 2004.  On June 17, 2005, Arroyo filed a petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

-6-

## II.   STANDARD OF REVIEW

The First Circuit has observed that "[h]abeas review involves the layering of two standards.  The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted."  Hurtado, 245 F.3d at 16.  Here, the constitutional rights asserted are governed by Jackson v. Virginia, 443 U.S. 307 (1979))(sufficiency of the evidence) and Darden v. Wainwright, 477 U.S. 168 (1986) and Donnelly v. DeChristoforo, 416 U.S. 637 (1974)(prosecutorial misconduct).  I will address standards for each of these claims in detail in the sections discussing the respective claims.

The general standard of review for federal habeas petitions is set out in the habeas statute: a federal court shall not issue the writ unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  It is conceded here that the state court applied the correct legal rule to the facts.  Consequently, Arroyo argues that the SJC unreasonably applied federal constitutional law with respect to his arguments for vacating the

conviction renewed in this habeas petition.

The Supreme Court has held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. More specifically, I must "ask whether the state court's application of clearly established federal law was *objectively* unreasonable." Id. at 409 (emphasis supplied). This standard means that I am not to "issue the writ simply because... [I] conclude[] in [my] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," id. at 411, or because of my "conception of how [the relevant Supreme Court decision] ought to be applied in that particular case[.]" Id. at 406. This is because "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Under First Circuit precedent "'some increment of incorrectness beyond error is required.' The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000).

-8-

### III.  DISCUSSION

**A.  DNA Evidence**

In his briefs for the SJC and this Court, Arroyo argues that Judge Spurlock erroneously admitted expert witness testimony by Joseph Varlaro of the Boston Police Crime Laboratory concerning "prejudicial DNA blood evidence" without first conducting a hearing regarding its reliability.  The Respondent argues that habeas review of this claim is barred because of procedural default.  I agree.

The SJC denied this branch of Arroyo's appeal because his counsel at trial failed properly to preserve objections to Mr. Varlaro's DNA analysis.  Massachusetts law requires defendants to "file an appropriate pretrial motion stating the grounds for any objections to DNA testimony and ... to request a hearing in accordance with the principles set forth in Canavan's Case, [432 Mass. 304, 309-12 (2000)]."  Arroyo, 442 Mass. at 145 citing Commonwealth v. Sparks, 433 Mass. 654, 659 (2001).  The SJC determined that since "Arroyo failed to do so here," it was "too late to raise objections concerning the reliability of the testing and the conclusions reached."  Arroyo, 442 Mass. at 145 citing Sparks, 433 Mass. at 660.

The Respondent argues that this determination constitutes an adequate and independent state law ground within the meaning of the procedural default rule, thereby precluding habeas review.

See, e.g., Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995). A finding that a determination constitutes an adequate and independent state law ground is appropriate even where the state court, "after deciding a party is procedurally barred from raising a claim, ... nonetheless reviews the merits for a miscarriage of justice and discusses federal law in that context[.]" Brewer v. Marshall, 119 F.3d 993, 1000 n. 7 (1st Cir. 1997), cert. denied, 522 U.S. 1151 (1998); see also Gunter, 291 F.3d at 80 citing Tart v. Commonwealth, 949 F.2d 490, 496 (1st Cir. 1991). Arroyo concedes that his failure to follow Massachusetts procedural rules would normally foreclose federal habeas review of the admission of the DNA analysis. And, I find that the SJC's review of the correctness of the admission of the evidence and the merits of Arroyo's ineffective assistance of counsel claim do not "undercut the adequacy and independence of the state grounds." Brewer, 119 F.3d at 1000 n. 7.

Arroyo argues that his procedural default should nonetheless be excused because of ineffective assistance of counsel. To excuse a procedural default, "a petitioner [must] show[] either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." Gunter, 291 F.3d at 78 citing Coleman, 501 U.S. at 750. The Supreme Court has recognized attorney error rising to the level of constitutionally

ineffective assistance of counsel as a cause sufficient to excuse procedural default.

In Murray v. Carrier, 477 U.S. 478 (1986), the Supreme Court held that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Id. at 489; see also Gunter, 291 F.3d at 81-82. Since the Respondent has not challenged whether the ineffective assistance claim was sufficiently presented and considered by the state court, I will assume the ineffectiveness claim was exhausted. See Arroyo, 442 Mass. at 145.

In this case, as in Gunter, it is unclear whether Arroyo "is attempting to use the ineffective assistance of counsel claim as cause for the procedural default or as a freestanding claim." 291 F.3d at 82 n.1; see A.R. I(2), Appellant's Brief at pp. 36-39.[6] To the extent that Arroyo is arguing ineffective assistance to excuse his trial counsel's failure properly to preserve a separate constitutional claim based on the admission of the DNA evidence without hearing, as suggested by the caption heading to Argument V in his initial Brief to the SJC, he has failed to "meet the high burden of showing actual prejudice." Ortiz v.

---

[6] In a similar case, Mello v. DiPaulo, 295 F.3d 137 (1st Cir. 2002), the First Circuit treated another petitioner's claims "as 'hybrid' claims because they were argued both as independent grounds for relief and as an ineffective assistance of counsel ground for relief." Id. at 143.

DuBois, 19 F.3d 708, 714 (1st Cir. 1994), cert. denied, 513 U.S.
1085 (1995).  "To scale this wall, a petitioner must demonstrate
'not merely that the errors at ... trial created a possibility of
prejudice, but that they worked to his actual and substantial
disadvantage, infecting his entire trial with error of
constitutional dimensions.'"  Id. quoting United States v. Frady,
456 U.S. 152, 170 (1982).  In this case, the SJC independently
reviewed the expert's testimony at trial and "f[ou]nd no basis to
conclude that it was without adequate scientific basis" or
admitted erroneously.  Arroyo, 442 Mass. at 145.  I agree.
Consequently, I find that Arroyo has failed to meet his burden of
establishing that the trial judge's decision to admit Mr.
Valaro's testimony without a *Daubert* hearing resulted in cause
and prejudice that ought to excuse his procedural default.

     In addition, I note that even if I were to assume that the
alleged ineffective assistance constituted cause for the
procedural default that resulted in prejudice, Arroyo has failed
to present an underlying "habeas-worthy constitutional claim."
Gunter, 291 F.3d at 83.  In his initial Brief to the SJC, Arroyo
made a passing constitutional reference by claiming that the
trial judge "must conduct a hearing in the first instance and
make a threshold inquiry concerning the reliability of the
testing procedures before submitting such evidence to the jury"
in order "[t]o ensure reliability as a matter of state and

federal due process[.]"  [A.R. I(2), Appellant's Brief at p. 36.]
Arroyo cited only to two SJC decisions and United States v.
Martinez, 3 F.3d 1191, 1198 (8th Cir. 1993).  None of these
decisions stand for the proposition suggested that a trial
judge's failure to make a reliability determination, *sua sponte*,
as to expert DNA evidence amounts to a per se due process
violation.  Citing to Daubert v. Merrell Dow Pharmaceuticals,
Inc., 509 U.S. 579 (1993) does not cure this deficiency.  It is
clear that "[t]he habeas corpus anodyne is designed neither to
provide an additional layer of conventional appellate review nor
to correct garden-variety errors, whether of fact or law, that
may stain the record of a state criminal trial.  Rather, the
remedy is limited to the consideration of federal constitutional
claims." Burks, 55 F.3d at 715.  In that vein, "a violation of a
state's evidentiary rule warrants federal habeas corpus relief
only when such violation results in the denial of fundamental
fairness, and concomitantly, a violation of due process." Brown
v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000); see also Nelson v.
Moriarty, 484 F.2d 1034, 1036 (1st Cir. 1973)(finding that the
trial court's alleged errors in admitting unreliable, hearsay, or
irrelevant testimony did not raise due process issues of
constitutional magnitude entitling the petitioner to habeas
corpus relief); Subilosky v. Moore, 443 F.2d 334, 336 (1st Cir.
1971)(finding that the improper admission of the Commonwealth's

additional impeachment evidence was not prejudicial under the harmless error rule of <u>Chapman v. California</u>, 386 U.S. 18 (1967) and <u>Harrington v. California</u>, 395 U.S. 250 (1969)).

To the extent that Arroyo's assertion of ineffective assistance of counsel in this context was meant to stand alone, which the SJC appears to have specifically considered, I find that the SJC's analysis under <u>Commonwealth v. Saferian</u>, 366 Mass. 89 (1974) to be a reasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984),[7] which holds that:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687.  This means the petitioner must "demonstrate (1) that 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  <u>Dugas v. Coplan</u>, 428 F.3d 317, 327

---

[7] "Although <u>Strickland</u> and <u>Saferian</u> do not employ identical phraseology, we have described those variations as 'minor' and have concluded that, for habeas purposes, <u>Saferian</u> is a functional equivalent of <u>Strickland</u>." <u>Ouber v. Guarino</u>, 293 F.3d 19, 32 (1st Cir. 2002) <u>citing</u> <u>Scarpa v. DuBois</u>, 38 F.3d 1, 7-8 (1st Cir. 1994).  Consequently, it is immaterial that the SJC cited only to <u>Saferian</u> and not <u>Strickland</u> in its decision.

(1st Cir. 2005) quoting Strickland, 466 U.S. at 688, 694.  Here, the SJC found that Arroyo "failed to allege any facts that would suggest that such an objection would have succeeded and that he was thereby prejudiced by its absence." Arroyo, 442 Mass. at 145.  My review of the record satisfies me that this finding is well founded and consequently I find the SJC reasonably concluded that "Arroyo's trial counsel did not render ineffective assistance by failing to object to" the DNA evidence.  Id.

In sum, I deny habeas relief based on the claim that the trial judge admitted DNA evidence without first making reliability determinations *sua sponte*.

## B.  Sufficiency of the Evidence

Arroyo's most compelling argument is that the SJC's holding that the Commonwealth presented sufficient evidence of his guilt was an unreasonable application of Jackson v. Virginia, and thus, the convictions violate due process of law.[8]  The Respondent only argues that the SJC's decision was a reasonable application of

---

[8]  In assessing Arroyo's challenge to the sufficiency of the evidence, the SJC stated that it "must determine whether the evidence presented at trial, together with all reasonable and possible inferences that might properly be drawn from it, was sufficient to permit a rational jury to find beyond a reasonable doubt the existence of every essential element of the crimes charged." Arroyo, 442 Mass. at 139-140 citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  Since the SJC acknowledged in Latimore that "the directed verdicts standard required by Jackson v. Virginia,... [is] substantially comparable to that heretofore applied by this court[,]" id. at 678, I am satisfied that the SJC identified and applied the correct governing legal principle from the Supreme Court's decisions.

the appropriate standard.

The question to be answered when reviewing an insufficiency-of-the-evidence claim is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Hurtado, 245 F.3d at 16 quoting Jackson, 443 U.S. at 319 (emphasis in original). Compare Stewart v. Coalter, 48 F.3d 610, 613-14 (1st Cir. 1995)(applying the "more stringent literal language" of the Jackson majority, which "represents the pole most favorable to the defendants," as opposed to the standard formulated by the three concurring Justices in Jackson, namely "whether there was *some* evidence to support the disputed finding").

The First Circuit has proposed the following guidelines as to some of the principles to consider when evaluating the objective reasonableness of a state court's determination of an insufficiency-of-the-evidence claim:

> (1) The focus of the inquiry is on the state court decision;
> (2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;
> (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;
> (4) The failure of a state court to give appropriate weight to all of the evidence may mean that its

-16-

conclusion is objectively unreasonable; and
(5) The absence of cases of conviction precisely
parallel on their facts does not, by itself, establish
objective unreasonableness.

Hurtado, 245 F.3d at 18.  See also Torres v. Mullin, 317 F.3d

1145, 1163-64 (10th Cir. 2003)(citing Hurtado as one of the

recent circuit decisions that have identified factors relevant to

the inquiry of whether the state court unreasonably applied the

Jackson standard); Kilburn v. Maloney, 383 F.Supp.2d 247, 259 (D.

Mass. 2005)(setting out and applying the principles in Hurtado).

Expressly "[v]iewing the evidence in its light most

favorable to the Commonwealth," Arroyo, 442 Mass. at 140 citing

Commonwealth v. Morris, 422 Mass. 254, 255 (1996), the SJC

concluded that the jury could have found that:

> Arroyo had a motive to murder Rivera (the theft of his
> and Leon's clothing), an intention to confront Rivera
> on the day of the shooting, the means to murder Rivera
> and to injure LaBranche (a nine millimeter handgun),
> and a plan to flee to Puerto Rico to evade detection
> and arrest.  In addition, they could have found that
> Arroyo generally fit the description of the assailant
> given by the eyewitnesses who testified, and that the
> green jacket worn by the assailant and discarded by him
> shortly after the shooting along his path of flight had
> been worn and discarded by Arroyo that day.  Finally,
> they could have concluded that Arroyo's unexplained
> apology to Torres that evening, before the victim's
> death was known to her, was an apology for killing the
> father of her children just hours before.

Arroyo, 442 Mass. at 140.  In drawing this conclusion, the SJC

rejected Arroyo's contention that the "evidence regarding the

green jacket was too inconclusive for the jury both to have

inferred that the jacket found by the police had been worn by the

-17-

assailant, and that Arroyo was wearing it at the time of the shooting." Id. The SJC reasoned that "[t]he jury could properly have inferred from the evidence that the jacket was worn by the assailant" because "[i]t was found along the assailant's path of flight; a police officer testified that it appeared to have been discarded recently; and an eyewitness to the shooting testified that it was similar to the one she saw the assailant wearing. The jury could also have inferred from the DNA evidence that the jacket had been worn by Arroyo." Id.

While the SJC's factual findings are presumed to be correct unless the Petitioner can rebut the presumption of correctness by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), I find that two of the SJC's subsidiary findings deserve discussion given that the critical element being challenged as insufficiently proven is identity.

First, in outlining the facts, the SJC stated that the morning of the shooting, Carmen Torres observed that Arroyo was wearing a jacket, the color of which she could not remember at trial. Id. at 139. The SJC also found that when Ms. Torres next saw Arroyo at the party after the shooting, he was no longer wearing a jacket. Id. This interpretation of Ms. Torres's observations in conjunction with the DNA evidence was presented to support the SJC's finding that the jury "could have found that ... the green jacket worn by the assailant and discarded by him shortly after the shooting along his path of flight had been worn

-18-

and discarded by Arroyo that day." Id. at 140.[9]  The SJC appears
to have derived this finding from the statement of the facts in
the State Appellee's Brief where the Commonwealth contended that
at the birthday party "Torres noticed that the defendant *had*
changed his clothes; he no longer had the jacket that he had on
earlier in the morning."  [A.R. 1(3), Appellee's Brief, p. 12
(emphasis supplied).]  Consequently, it appears that the
Commonwealth's interpretation, accepted by the SJC, is that
Torres noticed that Arroyo *had* taken off his jacket that he had
been wearing earlier in the morning before he arrived at the
party.  This, however, misconstrues the part of Torres's
testimony cited by the Commonwealth.  Torres was asked on direct
examination "Did something happen to the way he was dressed
*before he left the party*?"  Her answer, "He changed clothes.  He
didn't have his jacket on.  He just had like a tee shirt on."
[A.R. III(3), Transcript at p. 3-119 (emphasis supplied).]  In
cross examination, Ms. Torres then spoke of Arroyo changing his
clothes *at the party*, as opposed to before arriving at the party.
[A.R. III(3), Transcript at pp. 3-144 - 3-146.]  Nevertheless,
even with reference to the unacknowledged fine points and nuances
in Torres's observations about Arroyo's clothes on the day of the

_____

[9] The Commonwealth's interpretation of Ms. Torres's
testimony formed part of its argument to the SJC that there was
sufficient evidence to find that Arroyo was the shooter based on
the jacket connection. [A.R. 1(3), Appellee's Brief at pp. 19,
24.]

-19-

shooting, the more fundamental point remains that the
Commonwealth presented DNA evidence supporting the conclusion
that Arroyo's blood was found on a jacket "pretty similar" to the
one worn by the shooter and found on the shooter's path of
escape.

Second, the SJC's determination that a jury could have found
that Arroyo and Ms. Leon had "a plan to flee to Puerto Rico to
evade detection and arrest" as evidence of conscious of guilt
proving identity, Arroyo, 442 Mass. at 140, appears to be an
overreading of the record.  Although it is true that a jury *could
have* found that Arroyo's "sudden" decision to accompany Ms. Leon
to Puerto Rico to visit her children was a pre-meditated plan to
flee, I observe that the trial judge specifically declined the
Commonwealth's suggestion of instructing the jury on
consciousness of guilt based on Torres's testimony at trial about
the plane tickets and the fact that she did not see Leon and
Arroyo again after the birthday party.  [A.R. II(5), Transcript
at p. 5-3 - 5-5.]  I further observe that while evidence of
flight may be circumstantial evidence of guilt, the "flight
evidence 'must ... provide the jury with more than an opportunity
for mere 'conjecture and speculation.'"  United States v. Al-
Sadawi, 432 F.3d 419, 424 (2nd Cir. 2005) quoting United States
v. Sanchez, 790 F.2d 245, 252 (2nd Cir. 1986) (quoting United
States v. Myers, 550 F.2d 1036, 1050 (5th Cir. 1977)).

Consequently, I attach little weight to evidence of planned
flight in this sufficiency-of-the-evidence analysis.  Finally, I
note that the SJC itself did not specifically list the plan to go
to Puerto Rico as consciousness of guilt in its summary of the
determinative evidence supporting the conviction, see Arroyo, 442
Mass. at 141 n.8.  Consequently, the reference to the flight
evidence does not detract form the reasonableness of the SJC's
conclusion.

       In evaluating the reasonableness of the SJC's decision, I
next consider arguments made by Arroyo that the SJC did not
specifically address in its sufficiency-of-the-evidence
discussion.  In his Brief and Reply Brief to the SJC, Arroyo had
argued that (1) none of the witnesses to the crime identified him
as the assailant and their descriptions of the assailant varied
considerably, (2) there was no forensic evidence at the scene,
such as fingerprint or blood evidence, which established his
presence at the scene, (3) the jacket was never tested for
gunpowder residue to either confirm or deny the possibility of
its use by the shooter, (4) there was no evidence of blood found
on the assailant's escape path, (5) there was no evidence of when
the blood was deposited on the jacket, (6) there was no evidence
Arroyo had cuts or scrapes on him around the date of the
shooting, (7) there was no ballistics testimony connecting the
defendant to the crime.  [A.R. I(2), Defendant's Brief, p. 22-25;
A.R. I(4), Defendant's Reply Brief, p. 2-4.]  Arroyo renews these

-21-

arguments in his Memoranda for this Court.[10]  Although a
reviewing court should not ignore appellate arguments, I note
that it is only the "failure of the state court to consider at
all a *key* argument of the defendant [that] may indicate that its
conclusion is objectively unreasonable[.]"  Hurtado, 245 F.3d at
18 (emphasis supplied).

     Arroyo's arguments are essentially specifications of the
proposition that this case rested entirely on circumstantial
evidence.  There is no doubt that the SJC understood that the
Commonwealth did not present direct eyewitness testimony.
However, "[t]he absence of direct evidence -- e.g., the lack of
testimony of any individual who personally witnessed ... [Arroyo
shoot Rivera], or of any photograph or videotape showing the same
-- is irrelevant.  As [the First Circuit has] repeatedly
emphasized, 'circumstantial evidence, if it meets all the other
criteria of admissibility, is just as appropriate as direct
evidence and is entitled to be given whatever weight the [fact
finder] deems it should be given.'"  United States v.
Melendez-Torres, 420 F.3d 45, 49 (1st Cir. 2005) quoting United
States v. Gamache, 156 F.3d 1, 8 (1st Cir. 1998).  Not only may
the evidence be entirely circumstantial, but it "'need not

_____

     [10] The SJC did specifically note in footnotes in the
Background section the fact that the Commonwealth did not present
evidence that Arroyo ever received an injury from the 9 mm
handgun he had been carrying that day or even that a 9 mm gun was
even used in the crime.  Arroyo, 442 Mass. at 137 n. 1, 138 n. 2.

exclude every hypothesis of innocence; that is, the factfinder
may decide among reasonable interpretations of the evidence.'"
United States v. Hahn, 17 F.3d 502, 506 (1st Cir. 1994) quoting
United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir.
1991).  Furthermore, the SJC acknowledged one of the inconsistent
descriptions of the assailant given to one of the police officers
in a footnote within the Background section.  Arroyo, 442 Mass.
at 137 n. 1.  Consequently, the SJC appears to have understood
that the fact that "Arroyo generally fit the description of the
assailant given by the eyewitnesses who testified" only
corroborated, rather than confirmed, the inference drawn from the
jacket connection that Arroyo was the shooter.  Id. at 140.

     Arguments related more specifically to the lack of other
kinds of circumstantial evidence that could have also tied Arroyo
to the crime, if such evidence existed, are similarly unavailing.
Arroyo's counsel specifically cross-examined the Commonwealth's
experts on the lack of certain forensic and ballistic evidence
and he argued this angle at length in his closing.  However, the
lack of such evidence does not destroy inferences that can be
drawn from the evidence presented at trial, even if it may affect
the confidence with which a jury draws those inferences.  The
lack of such evidence is not necessarily exculpatory in these
circumstances.  I find to be reasonable the SJC's conclusion that
a jury could have drawn the reasonable inference that Arroyo was
the shooter from the circumstantial evidence introduced, even

-23-

without the more damning evidence that might or might not have
been introduced if the investigating authorities had pursued
those avenues.  Arroyo had the means to shoot Rivera because
Torres saw him with a handgun the morning of the shooting.
Arroyo's motive is evident in his remark to Torres that he would
"take care of" Rivera, who Arroyo believed had stolen clothes
belonging to him and Leon.  Arroyo matched the general
description of the eyewitnesses, accepting the limitations of
such evidence and certain inconsistencies between eyewitnesses.
Blood matching Arroyo's DNA profile was found on a green jacket
that was "pretty similar" to the one seen on the shooter
according to one of the eyewitnesses.  Less than a fraction of
one percent of the population have the same DNA profile.  The
jacket was found unsoiled in the area where eyewitnesses observed
someone matching the description of the shooter running away from
the scene of the shooting.  And after the shooting, Arroyo told
Torres, the mother of the deceased victim's children, that he was
sorry but gave no explanation why.  Although perhaps not
overwhelming, this evidence was sufficient to prove identity and
thus the crimes charged beyond a reasonable doubt.

     In sum, considering the principles set out in Hurtado and
Williams, I find that "[t]he state court directly addressed the
point at issue -- sufficiency of the evidence ... [and that]
[i]ts articulated reasons went to the conclusions it reached."
Hurtado, 245 F.3d at 18.  Consequently, "it was not objectively

unreasonable for the state court to conclude that a rational jury could convict [Arroyo]." Id. at 19.

## C.    The Commonwealth's Closing Argument

Finally, Arroyo argues that the SJC's refusal to overturn the convictions based on the Commonwealth's improper closing was unseasonable and thus that the convictions violate due process of law.  The Respondent argues that habeas review of this claim is barred because of procedural default and failure to exhaust, and that even if the claim as to improper reference to demographic statistics was exhausted, the SJC's decision was a reasonable application of the proper standard.

Arroyo takes issue with two parts of the prosecutor's summation at trial: (1) his reference to demographic statistics that were not in evidence, leading to the unsubstantiated assertion that statistically the "only one left" was Arroyo, and (2) his two references to the fact that a 9 mm handgun was the murder weapon when there was no direct evidence substantiating this assertion introduced at trial.  With respect to the second error, the SJC observed in two footnotes that the 9 mm shell casings that had been found at the scene had been erroneously excluded by the trial judge.  Arroyo, 442 Mass. at 139 n. 5, 148 n. 14.

## 1.    Demographic Statistics

The Respondent argues that the demographic statistics

argument is barred because Arroyo failed to meet his "heavy
burden of demonstrating satisfaction of the exhaustion
requirement" codified at 28 U.S.C. §§ 2254(b) and (c). Barresi
v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002). I disagree. In his
initial Brief to the SJC, Arroyo invoked the Fifth and Fourteenth
Amendments in the Issues and Summary of Argument sections and in
the caption heading to Argument VI. [A.R. I(2), Appellant's
Brief at pp. 1, 20, 39.] Arroyo also cited to Berger v. United
States, 295 U.S. 78, 88 (1935), where the Supreme Court ordered a
new trial because the prosecutor's misconduct was so prejudicial.
Berger is cited, albeit by the dissent, in the two Supreme Court
cases to which Arroyo now refers in his Memoranda to this Court.
See Darden, 477 U.S. at 192-93 and Donnelly, 416 U.S. at 651.
Arroyo also cited to state court decisions concerning improper
summations in his state court brief that referenced appropriate
federal law. [A.R. I(2), Appellant's Brief at pp. 39-48 citing
Commonwealth v. Shelley, 374 Mass. 466, 471-472 (1978) and
Commonwealth v. Santiago, 425 Mass. 491, 495 (1997).] In
addition, the Respondent argues in the merits section of his
brief that "[t]he SJC's analysis was entirely consistent with
clearly established Supreme Court precedent." [Respondent's
Memorandum, p. 24.] Together, it is apparent Arroyo advanced
"substantial[ly] equivalent" claims before the SJC as those
raised in his federal habeas petition, which was certainly

sufficient to put a reasonable jurist on notice of the
constitutional dimensions of the petitioner's claim.  <u>Barresi</u>,
296 F.3d at 52.

Before turning to the question of whether the SJC reasonably
applied the proper standard in evaluating whether the
prosecutor's improper demographic statistics remarks rose to the
level of due process violation, I must first consider whether the
decision was "contrary to" clearly established federal law.  In
the SJC decision, the Court does not cite to federal law on this
issue.  However, the Respondent argues, and the Petitioner does
not contest, that "[t]he SJC's analysis was entirely consistent
with clearly established Supreme Court Precedent." [Respondent's
Brief, p. 24.]  The Respondent also argues that the four factors
to be considered under First Circuit precedent "are substantially
identical to the factors relied on by the SJC in reaching its
objectively reasonable determination[.]" [Respondent's Brief, p.
25.]  Although neither party has pointed me to a federal case
supporting this view, I find that the standard used by the SJC is
the functional equivalent of the federal law standard.  <u>Cf.</u>
<u>Scarpa</u>, 38 F.3d at 7-8 (finding that the SJC standard set forth
in <u>Saferian</u> is the functional equivalent of the federal standard
for ineffective assistance of counsel set forth in <u>Strickland</u>).
Consequently, the SJC's analysis of the prosecutorial

misstatement is not "contrary to" federal law.[11]

As in Donnelly, "[t]his is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right."  416 U.S. at 643 (internal citations omitted).  Rather, this is a case where the Petitioner claims that the prosecutor improperly referred to alleged facts not in evidence.  In asserting a constitutional violation, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'"  Darden, 477 U.S. at 181 quoting Darden

---

[11] According to the SCJ, the relevant question is "whether the error was prejudicial to the point of requiring a reversal of the conviction."  Commonwealth v. Kozec, 399 Mass. 514, 523 (1987), cited in, Commonwealth v. Kater, 432 Mass. 404, 423 (2000).  Massachusetts Courts equate the question of whether reversal is required with the question of whether the defendant was deprived of a fair trial.  Commonwealth v. Cobb, 26 Mass.App.Ct. 283, 286 (1988); Commonwealth v. Daley, 439 Mass. 558, 567 n. 6 (2003); Commonwealth v. Pagano, 47 Mass.App.Ct. 55, 63 (1999) citing Kozec, 399 Mass. at 518 ("The ultimate question [is] ... whether in the circumstances these ["prosecutorial excesses in the closing argument"] deprived the defendant of a fair trial and require reversal[.]").  To determine whether reversal is required, the Massachusetts courts consider the four factors set out in Kozec, which include the question of "whether the error, in the circumstances, possibly made a difference in the jury's conclusion."  Kater, 432 Mass. at 422-23.  I find that this approach is the functional equivalent of the Darden/Donnelly standard, which asks whether, given all of the circumstances, "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden, 477 U.S. at 181 quoting Donnelly, 416 U.S. at 643.  Consequently, I assume that the SJC's analysis is not contrary to clearly established federal law.

v. Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983).  "The
relevant question is whether the prosecutors' comments 'so
infected the trial with unfairness as to make the resulting
conviction a denial of due process.'"  Darden, 477 U.S. at 181
quoting Donnelly, 416 U.S. at 643.

Here, the SJC expressly took into consideration that the
closeness of the connection between the green jacket and Arroyo
to the heart of the Commonwealth's case, namely the identity of
the shooter, helped Arroyo meet his burden.  However, the SJC
also expressly noted that "the judge explicitly instructed the
jury to disregard the demographic data for the express reason
that it was not supported by evidence."  Arroyo, 442 Mass. at
148.  What was determinative for the SJC was that it could not
say that "the Commonwealth's error, particularly after the
judge's curative instruction, made a difference in the jury's
conclusions" given the rest of the evidence.  Id.  I find that
this conclusion is a reasonable application of the functional
equivalent of the Darden/Donnelly test.

As the SJC explained, "[a]lthough the expert's testimony did
not establish to a certainty that Arroyo was the source of the
bloodstain on the green jacket, it did support a strong inference
that he was."  Id.  Mr. Varlaro testified that only one in 75,000
Caucasians and one in 81,000 Southeastern Hispanics shared the
profile.  [A.R. II(4), Transcript at p. 4-90.]  Mr. Varlaro also
testified that "[a]nother way of stating the statistical

-29-

significance of this DNA match is to say that in any population group that we surveyed, we would expect to find less than a fraction of one percent of that population group to have this particular DNA profile[.]"  [A.R. II(4), Transcript at p. 4-90.] Given the trial judge's explicit instruction to the jury to disregard the prosecutor's reference "to the population size of the City of Boston *and* what can be *extrapolated* from that," [A.R. II(5), Transcript at p. 5-79], a reasonable juror, following these instructions, would only consider Mr. Varlaro's probability evidence, having heard the limitations of the analysis.  Even with these limitations, Mr. Varlaro's testimony provides sufficient evidence to allow a juror to infer that the blood on the jacket came from Arroyo.  Consequently, I find that the SJC reasonably concluded that the prosecutors' comments, even his pernicious zeroing in on Arroyo as the "only one left" in Boston whose blood could have been on the jacket, considered in light of the trial judge's curative instructions and the other evidence linking Arroyo to the shooting, did not make a difference in the jury's conclusions.  Since this conclusion is the functional equivalent of finding that the prosecutors' comments, considered in light of the trial judge's curative instructions and the other evidence, did not infect the trial with such unfairness as to make the resulting conviction a denial of due process, I deny habeas relief on this ground.

2.   9 mm Handgun

As to the prosecutor's two improper references to the 9 mm handgun in the summation, the Respondent argues that this claim is procedurally defaulted because Arroyo cannot demonstrate prejudice.  The SJC ruled that Arroyo's failure to object to this improper argument at the trial, as it did to the demographic statistics argument, resulted in procedural default.  Given the failure to object, the SJC's review of the improper 9 mm handgun statements was "limited to whether there was a substantial likelihood of a miscarriage of justice", which is the same as "whether defense counsel's failure to object constituted ineffective assistance of counsel."  Arroyo, 442 Mass. at 147, 148 n. 13, citing Commonwealth v. Kater, 432 Mass. 404, 423 (2000).[12]  The SJC concluded that there was no miscarriage of justice justifying a waiver of the procedural default under state law because the Court was "substantially confident that, absent the error, the jury's verdicts would have been the same." Arroyo, 442 Mass. at 148.  This determination constitutes an adequate and independent state law ground precluding habeas review unless Arroyo can show "either cause for the default and

_____

[12] The SJC explained that "[a] substantial likelihood of a miscarriage of justice exists unless we are substantially confident that, if the error had not been made, the jury verdict would have been the same." Arroyo, 442 Mass. at 147-48 (internal quotations omitted).  The SJC also noted that "[t]his is the same standard that we would apply in considering whether defense counsel's failure to object constituted ineffective assistance of counsel." Id. at 148 n. 13.

-31-

prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." Gunter, 291 F.3d at 78 citing Coleman, 501 U.S. at 750. The SJC's decision on whether the 9 mm handgun comments amounted to a miscarriage of justice "is a determination made under state law, ... and does not answer the habeas question under federal law of whether ... actual innocence" has been demonstrated. Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999) (internal citation omitted).

Arroyo argues that his counsel's failure to object to the 9 mm handgun comments deprived him of the effective assistance of counsel in violation of the standard set out in Strickland. [Petitioner's Reply Brief, p. 17; A.R. I(2), Appellant's Brief at p. 46.] Arroyo also argues that "the dearth of any evidence establishing [his] guilt ... may establish [his] actual innocence and that a 'miscarriage of justice' will result if the conviction is upheld." [Petitioner's Reply Brief, pp. 17-18.]

Assuming again, as I did with respect to the DNA evidence claim, that Arroyo properly exhausted the ineffective assistance of counsel claim, I find that he cannot meet the Strickland standard whether I treat this as a 'hybrid' claim, that is considering whether the procedural default is excused for cause and as an independent ineffective assistance of counsel claim, or just the former. See Mello v. DiPaulo, 295 F.3d 137, 143 (1st

Cir. 2002).  As discussed *supra* in Section III(A), to satisfy the
Strickland standard, Arroyo must "demonstrate (1) that 'counsel's
representation fell below an objective standard of
reasonableness,' and (2) 'a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different.'"  Dugas, 428 F.3d at 327 quoting
Strickland, 466 U.S. at 688, 694.  In this case, it was
objectively unreasonable for Arroyo's counsel to fail to object
to the prosecutor's two improper references to the 9 mm handgun.
His counsel was aware of the importance of the gun used for
identification of the shooter since he filed a pre-trial motion
to exclude the 9 mm shell casings found at the scene.  However,
as the SJC found, even without evidence identifying the type of
gun used in the shooting, "the prosecutor could have argued and
the jury could properly have inferred that Arroyo used" the 9 mm
handgun described by Torres in the shooting.  Arroyo, 442 Mass.
at 148.  Consequently, like the SJC, I cannot find that the
result of the proceeding would have been different if Arroyo's
counsel had objected and presumably the trial judge had given
curative instructions.  In other words, even if Arroyo's counsel
had objected to these improper remarks, "the rest of the evidence
supporting Arroyo's guilt, including his statements before and
after the crimes and the evidence linking him to the jacket worn
by the assailant," makes me "substantially confident that, absent

the error, the jury's verdicts would have been the same."  Id.

Arroyo's alternative argument also fails because "for habeas purposes the federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence." Simpson, 175 F.3d at 210 citing Schlup v. Delo, 513 U.S. 298, 321 (1995) and Burks, 55 F.3d at 717.  "To establish actual innocence, 'petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Simpson, 175 F.3d at 210 citing Schlup, 513 U.S. at 327, cited in, Bousley v. United States, 523 U.S. 614, 623 (1998).  "This exception is quite narrow and seldom used." Simpson, 175 F.3d at 210.  Given my finding in the preceding section that the properly admitted circumstantial evidence and the reasonable inferences drawn therefrom were sufficient to find the petitioner guilty beyond a reasonable doubt, Arroyo cannot establish actual innocence excusing his procedural default.  Consequently, I also deny habeas relief on this ground.

### III.  CONCLUSION

For the reasons set forth more fully above, I deny the Petitioner's petition for habeas relief.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE